UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| COLIN C. O'KROLEY,<br><br>Plaintiff,<br><br>v.<br><br>GNC HOLDINGS LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 3:25-cv-00071<br><br>JUDGE RICHARDSON |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court[1] is the report and recommendation (Doc. No. 40, "R&R") of the Magistrate Judge. Via the R&R, the Magistrate Judge recommends that the Court grant in part and deny in part the motion to dismiss filed by Defendant, GNC Holdings LLC (Doc. No. 30, "Motion"). Via the Motion, Defendant seeks, pursuant to Rule 12(b)(6), the dismissal of the amended complaint (Doc. No. 26, "Amended Complaint") of *pro se* Plaintiff, Colin C. O'Kroley. In the R&R, the Magistrate Judge specifically recommends that the Motion be granted "with respect to Plaintiff's claims under Title VII and the ADA"—insofar as the Magistrate Judge recommends that those claims be dismissed in their entirety for failure to exhaust administrative remedies—"and [with respect to] Plaintiff's ADEA claims [that are] based on anything other than failure to promote and wrongful termination"—insofar as the Magistrate Judge recommends that Plaintiff's ADEA claims that are based on anything other than failure to promote and wrongful termination be dismissed for failure to exhaust administrative remedies. (Doc. No. 40 at 13). The

[1] Herein—except in quoted portions of the R&R wherein the Magistrate Judge refers to herself as "the Court"—"the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

Magistrate Judge recommends that the Motion be denied "with respect to Plaintiff's ADEA claims for failure to promote and wrongful termination and that these claims proceed for further development." (*Id.* at 14).

Plaintiff has filed objections (Doc. No. 41, "Plaintiff's Objections")[2] to the R&R. Defendant has filed a response (Doc. No. 50, "Defendant's Response") to Plaintiff's Objections.[3] Defendant also has filed objections (Doc. No. 47, "Defendant's Objections)[4] to the R&R. Plaintiff has filed a response (Doc. No. 49, "Plaintiff's Response")[5] to Defendant's Objections.

---

[2] Herein, a given use of the term "Plaintiff's Objections" may refer to the document (Doc. No. 41) itself, to the purported objections contained therein (i.e., the "objections" to the R&R contained within the "Plaintiff's Objections"), or to both.

Of note, beyond the request that the Court consider *de novo* those portions of the R&R to which Plaintiff objects, Plaintiff's Objections also include various requests for other types of relief. (Doc. No. 41 at 2). The Court declines to entertain those other requests for relief, as those requests for relief are not properly brought via objections to a report and recommendation.

[3] In connection with Plaintiff's Objections, Plaintiff filed two motions, one seeking to "supplement administrative record and for production of EEOC intake recording" (Doc. No. 42, "Motion to Supplement"), and one seeking "limited discovery and/or evidentiary hearing limited to exhaustion." (Doc. No. 43, "Discovery Motion"). Each of these motions relates to the issue—addressed in the R&R—of whether Plaintiff exhausted his administrative remedies as to some of his claims. Of note, Defendant's Response serves as a response to Plaintiff's Objections, to the Motion to Supplement, and to the Discovery Motion. In any event, the Court will herein deny the Motion to Supplement and the Discovery Motion as moot, given that the Court is herein adopting the R&R in its entirety—including the R&R's findings regarding the issue of administrative exhaustion (which are discussed below).

Finally, Plaintiff additionally has filed a motion for leave to file a late reply (Doc. No. 51, "Motion for Leave") to Defendant's Response. Incorporated within the Motion for Leave is a proposed reply (*id.* at 2-6, "Reply") to Defendant's Response. Notably, the Reply constitutes not just a (seeming) reply in further support of the Motion to Supplement and the Discovery Motion—but also a (seeming) reply in further support of Plaintiff's Objections. Importantly, the Local Rules plainly do not contemplate a reply being made in further support of objections to a report and recommendation. L.R. 72.02. Nevertheless, Defendant has indicated that it does not oppose the Motion for Leave. (Doc. No. 52 at 1). Accordingly, the Court will grant the Motion for Leave but will not consider the Reply incorporated therein to the extent that the Reply is made in further support of Plaintiff's Objections.

[4] Herein, a given use of the term "Defendant's Objections" may refer to the document (Doc. No. 47) itself, to the purported objections contained therein (i.e., the "objections" to the R&R contained within the "Defendant's Objections"), or both.

[5] The Court disregards Plaintiff's Response to the extent that it putatively serves as a vehicle to raise new objections not raised in Plaintiff's Objections and to argue in further support of Plaintiff's Objections.

For the reasons described herein, the R&R (Doc. No. 40) is adopted and approved in its entirety.

BACKGROUND

The parties have not objected to the background sections (regarding the procedural history and underlying circumstances of this case as well as the circumstances underlying the instant Motion) set forth by the Magistrate Judge in the R&R. So, the Court adopts those background sections in their entirety and repeats them below:

> **I. Procedural Background**
>
> Colin O'Kroley ("Plaintiff"), currently a resident of Wisconsin, filed this *pro se* lawsuit on December 21, 2024, against GNC Holdings, LLC ("Defendant" or "GNC"), his former employer. *See* Docket Entry No. 1. Plaintiff's lawsuit is based upon workplace events that occurred while he worked for Defendant in Tennessee during 2023 and up until his termination from employment on February 2, 2024. Defendant filed an early motion to dismiss based upon issues with both service of process and the sufficiency of the complaint, but Plaintiff was granted leave to file an amended complaint ([which was filed at] Docket Entry No. 26), which mooted the motion to dismiss and is now the operative pleading in the case. *See* Order entered September 16, 2025 (Docket Entry No. 25).
>
> Plaintiff seeks damages of $4.1 million based on allegations of workplace discrimination, including wrongful termination, failure to promote, failure to accommodate a disability, unequal terms and conditions of employment, retaliation, harassment, and hostile workplace. *See* Amended Complaint at 3 and 6. He brings legal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq.* ("Title VII") for sex and religious discrimination, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* ("ADEA") for age discrimination, and under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA") for disability discrimination. *Id.* at 2 and 4. Plaintiff asserts that he filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue letter on or about September 23, 2024. *Id.* at 6.
>
> In lieu of an answer, Defendant filed the pending motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant first argues that Plaintiff's allegations of sex, religious, and disability discrimination, as well as retaliation, were not included in his administrative charge of discrimination and that these claims must be dismissed because they were not administratively exhausted. Defendant's second dismissal argument is that the allegations set out in the

amended complaint are not sufficient to state plausible claims for relief under any of the federal anti-discrimination statutes. *See* Defendant's Memorandum in Support (Docket Entry No[.] 31). Plaintiff responded to this motion by arguing that (1) the exhaustion argument is premature because his actual charge of discrimination was not provided by Defendant in support of the motion and (2) the factual allegations set out in the amended complaint provide sufficient detail to state plausible claims for relief. *See* Response (Docket Entry No. 33). Defendant replied that nothing set out in Plaintiff's response is sufficient to rebut the motion to dismiss. *See* Reply (Docket Entry No. 34).

Given the parties' arguments and the fact that the actual charge of discrimination was not before the Court, the Court required Defendant to provide a copy of the charge of discrimination and required supplemental briefing from the parties on the issue of administrative exhaustion. *See* Order entered March 2, 2026 (Docket Entry No. 35).

The required supplemental briefing has been completed, and Defendant has filed Plaintiff's EEOC Charge File as an exhibit to its supplemental brief. *See* Docket Entry No. 36-1. Defendant argues that the Charge File and the Charge of Discrimination undisputedly confirm that only allegations of age discrimination regarding the denial of a promotion and termination were exhausted at the administrative level. *See* Supplemental Brief (Docket Entry No. 36). Plaintiff responds by arguing that there are errors and omissions in the EEOC intake notes and summary that are part of the Charge File, that he brought up "other issues" but the EEOC investigator focused on age discrimination, and that given his *pro se* status and the issues with the intake notes and summary that he has pointed out, "it is necessary to add certain charges that were not checked on the original intake." *See* Plaintiff's Supplemental Response (Docket Entry No. 38) at 4. As an alternative to dismissal, Plaintiff requests leave to again amend, to be permitted discovery or an evidentiary hearing on exhaustion, and to direct the EEOC to annotate the Charge of Discrimination to reflect his corrections. *Id.* at 4-5. In support of his response, Plaintiff attaches several exhibits, including two sworn declarations setting out his post-hoc corrections to the intake notes and summary. *See* Docket Entry Nos. 36-4 and 36-5. Defendant replies that Plaintiff's attempt to expand the scope of the clear and unambiguous content of his actual charge of discrimination is unsupported by the facts or law and should be rejected. *See* Defendant's Supplemental Reply (Docket Entry No. 39).

## II. Plaintiff's Allegations

The factual allegations set out in Plaintiff's amended complaint are asserted in a single paragraph and are not easily summarized. Thus, they are set out verbatim below:

> 1. The defendant terminated the plaintiff who was over 40 on 2-2-2024 and replaced him with a younger worker under 40 creating a

prima facie case for age discrimination. The defendant did not hire a woman Jane Doe on or around Q4 because '… she drove a bus for 30 years (implying she's too old), did not take supplements (possibly*), and "didn't fit our culture"…' per the District Manager (DM) at the time. * I noticed the applicant looking around the store while on the phone with the DM in a manner that I myself had after I was asked by my DM in Q2 2023 if I took supplements. (After seeing nothing I took in the store I responded "no" only to notice some (old) protein, amino acids, and a multi-vitamin, etc. in my cupboards that I had purchased outside of GNC after I arrived home the same day.) After I applied for a promotion via a posting labeled 'AZ City', it appears that although I was qualified for the position the employer apparently passed over my application due to my age and then surreptitiously posted an identical position labeled 'Phoenix AZ' apparently to try to find younger applicants. Although the application may have been filed outside of the claims "window" the status of the application was still pending within the claims "window" (December 2023). I also applied for other similar promotions including the Phoenix AZ DM position mentioned above without success. 2. The DM discriminated against the Plaintiff by denying him sick time but he awarded female workers sick time. The DM also provided better working conditions such as shorter hours to younger workers while increasing the Plaintiff's workload. Increasing an employee's workload can be an indication that the employer is attempting a constructive discharge. The Plaintiff's first DM also described the Plaintiff as a princess which the plaintiff found offensive since he does not identify as either a princess or a woman. The same DM contributed to a hostile work environment in other ways such as denying the Plaintiff time off, failing to pay him mileage and bonuses, and allowing an abusive and violent employee to stay on the payroll, etc. 3. The DM violated the ADA+ in Q1 of 2024. When I advised the DM that my YOUNGER+ subordinate was unable to complete tasks assigned to him he retorted "I could say the same thing about you!" When I pointed out that the subordinate in question had ADHD the DM said he was offended by the statement and that his wife had ADHD, but he still failed to distinguish that there was any difference between myself and my younger subordinate (so he perceived we were equally disabled). 4. A DM appeared to discriminate against the Plaintiff based on 'religion' because she was upset with the Plaintiff when he refused to "commit" to her "telekinetic" type of 'religious' belief. She deemed that his lack of success was determined by his failure to 'declare' his goals prior to achieving them. She also seemed to bring up 'moral' arguments or 'points' at times by, for instance, bringing up the subjects of marriage and children for instance. Plaintiff reserves the right to include other charges based

> on facts found during discovery and/or applicable laws found during discovery (or file them in state court if necessary) such as possible Negligence since an abusive employee who assaulted the plaintiff later confided in him that he was terminated from Amazon for threatening co-workers yet GNC failed to screen him out, put him on a 'short leash' or inform the Plaintiff of the likely dangers present at the workplace where he was assigned. 5. Retaliation and attempted constructive discharges appear to have occurred multiple times. Moreover, the various "methods of harassment/retaliation" may have been intermingled with the various ADEA etc, violations. For instance, the Plaintiff's wages, 401K match, bonuses and benefits were possibly inaccurately disbursed to harass the Plaintiff. (i.e. the motive for the denial of benefits may have been related to an attempted constructive discharge attempt because the defendant may have wanted to get rid of the Plaintiff, a protected worker over 40, via constructive discharge as opposed to terminating him outright). Upon determination and belief discovery will provide more evidence to support and/or clarify all of the Plaintiff's claims.

*See* Amended Complaint at 5.

## III. Plaintiff's Charge of Discrimination

After making an inquiry with the EEOC and participating in a telephone intake interview with an EEOC investigator, Plaintiff filed a written charge of discrimination on September 18, 2024, that asserted age discrimination occurring between 11/14/2023 - 02/02/2024. *See* Charge of Discrimination (Docket Entry No[.] 36-1 at 29-30). The supporting factual allegations set out in the charge are as follows:

> I. I was hired by the above-named employer on May 17, 2022, as Store Manager. I initially reported to Kate Shannon who reported to Matthew Bragg and later Steve Harmon. Kate Shannon left the company circa August 2023 and a new District manager search was commenced. I applied for the position vacated by Kate Shannon. Initially Laura Marlar who appeared to be under 40 was selected as Kate Shannon's replacement over me. Later Josiah Brannon, who is under 40, was selected over me to be District Manager and I reported to him. The employer has more than 20 employees. On February 2, 2024, I was terminated, and it appeared that I was replaced by Shane Gilbert who appeared to be under the age of 40, which, if confirmed, establishes a prima facie case of age discrimination (& in the above cases, if confirmed, as well).
>
> II. I managed a successful store in Nashville. Starting on November 14, 2023, I applied for a District Manager position outside of my

> territory. I also applied for several other district manager positions in several other territories. I was never contacted for interviews even though I was a qualified candidate. I later learned Josiah Brannon who is younger than me and under 40 had been selected in my district – district 40. I wasn't privy to who was hired in the districts outside my own but upon determination and belief one or more of the applicants hired was under 40 which if confirmed establishes prima facie case(s) for age discrimination.
>
> III. I believe I have been discriminated against because of my age (59) in violation of the Age Discrimination in Employment Act of 1967, as amended.
>
> I want this charge filed with both the EEOC and the State of local Agency, if any.
> I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.
>
> I declare under penalty of perjury that the above is true and correct.

*Id.*

(Doc. No. 40 at 1-6 (footnotes omitted)).[6]

THE MAGISTRATE JUDGE'S R&R

The Court now turns to the R&R's legal analysis. In setting forth this legal analysis, the Court first will set out those portions of the R&R's legal analysis to which Plaintiff's Objections are directed, namely those portions regarding Plaintiff's exhaustion of administrative remedies. The Court then will set out those portions of the R&R's legal analysis at which Defendant's Objections are directed, namely the portions regarding whether Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA claims for failure to promote and wrongful termination, such that those claims survive Defendant's 12(b)(6) Motion.

---

[6] Notably, the R&R generally uses the term "Charge of Discrimination" to describe the particular charge of discrimination filed by Plaintiff in this case, a copy of which is found on the docket in this case at Docket No. 36-1 at 29-30. Herein, when speaking in its own voice, the Court does likewise.

Regarding Plaintiff's exhaustion (or lack thereof) of administrative remedies, the Magistrate Judge found:

> Before a plaintiff can bring a lawsuit in federal court for claims based on violations of Title VII , the ADEA, or the ADA, the plaintiff must first exhaust administrative remedies by timely filing a charge of discrimination about those violations with the EEOC or the corresponding state agency. *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 760 (6th Cir. 2025) (ADA); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010) (ADEA); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). To ensure a likeness between the administrative claims and the litigation claims, "[t]he charge must be sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Younis*, 610 F.3d at 361 (quoting 42 U.S.C. § 2000e-5(f)(1)) (internal quotation marks omitted). In *Younis*, the Sixth Circuit described the rationale for the requirement that a plaintiff must first raise claims in an administrative charge with the EEOC before pursuing a lawsuit:
>
>> This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role.
>
> *Id.* at 361-62. Fifteen years later, the Sixth Circuit in *Pemberton* succinctly reemphasized the primacy of the actual charge of discrimination in determining whether claims have been administratively exhausted, stating "[a]s a general matter, employees should include their claims in their formal charges." *Pemberton*, 150 F.4th at 763.
>
> To litigate a claim brought under any of these statutes, a plaintiff's administrative charge must either (1) explicitly include the claim that is brought in the lawsuit or (2) include sufficient factual allegations so that a claim not explicitly stated could reasonably be expected to grow out of what is included in the EEOC charge. *Pemberton*, 150 F.4th at 761. The latter avenue generally requires there to be facts set out in the administrative charge that "would prompt the EEOC to investigate a different, uncharged claim." *Younis*, 610 F.3d at 362.
>
> In the instant case, the written Charge of Discrimination that Plaintiff signed and submitted does not satisfy either of these avenues for anything other than claims brought under the ADEA for age discrimination related to a failure to promote and termination. The charge explicitly sets out age discrimination in violation of the ADEA as the only basis for the charge and sets out factual allegations related only to Plaintiff's belief that he was not promoted and lost his job because of age

discrimination. *See* Docket Entry No. 36-1 at 29-30. Plaintiff's case does not involve a situation in which he simply did not mark a correct box or used imprecise language to describe his claims. To the contrary, even when given a liberal reading, Plaintiff's Charge of Discrimination contains nothing that supports a conclusion that any type of claim other than age discrimination based on a failure to promote or termination could reasonably be viewed as growing out of the facts and claims that are set out in the charge. Thus, Plaintiff's claims for sex discrimination, religious discrimination, disability discrimination, retaliation, and age discrimination based on anything other than failure to promote or termination were not administratively exhausted and must be dismissed for this reason. *See Pemberton*, 150 F.4th at 762 (the plaintiff's failure to accommodate claim under the ADA was not exhausted because he neither explicitly included a failure-to-accommodate claim in his charge nor stated facts that the claim reasonably related to or grew out of his charge).

To get around this seemingly clear barrier to pursuing unexhausted claims in this lawsuit, Plaintiff asks the Court to look two steps past what he included in his Charge of Discrimination. He asks the Court to first consider the summary of the intake interview notes taken by the EEOC investigator during Plaintiff's telephone interview as a basis to expand what is included in his Charge of Discrimination. Plaintiff then asks the Court to look beyond what is contained in the interview notes and also consider his recent, post-hoc declarations of what he contends are corrections to omissions or errors in the interview notes. *See* Plaintiff's Supplemental Response.

The Court rejects Plaintiff's argument without reservation. While there are limited situations in which exhaustion may be found based upon an EEOC document other than a formal charge of discrimination, *see Pemberton*, 150 F.4th at 764, Plaintiff has not set out a factually or legally supported argument that his case presents such a situation. Indeed, Plaintiff would have a difficult time making this showing given that (1) his initial inquiry to the EEOC complained about only age discrimination, (2) his telephone interview involved only allegations related to age discrimination, and (3) he was given a draft of the Charge of Discrimination for review, made revisions that were included in the final charge, and signed the charge without including any allegations other than those related to age discrimination. *See* Docket Entry No. 36-1 at 18-27. In the end, Plaintiff fails to show any reason that the Court should look beyond what is contained in his actual Charge of Discrimination in determining what claims have been exhausted.

Plaintiff also provides absolutely no legal authority for his novel request that the Court should look outside the Charge of Discrimination and consider his post-hoc revisions and corrections to the intake summary notes and/or explore or permit discovery about "other issues" that he contends he mentioned in the EEOC interview. Plaintiff's position would essentially render the exhaustion requirement meaningless and is contrary to the law and the purpose of exhaustion. *See Gant v. S Means, LLC*, No. 1:19-CV-00090, 2020 WL 2512826, at *3 (M.D. Tenn. May 15, 2020) (Campbell, J.) (plaintiff's assertions that she had oral conversation with

EEOC investigator about racial discrimination and that she did not understand the potential legal ramifications of the charge she filed were not sufficient to exhaust her racial discrimination claim when the actual charge of discrimination alleged only disability discrimination and contained no facts that would reasonably suggest a claim of racial discrimination).

(Doc. No. 40 at 8-11).

On the question of whether Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA claims for failure to promote and wrongful termination, the Magistrate Judge found:

> "The ADEA prohibits an employer from failing or refusing to hire, discharging, or discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age ..." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting 29 U.S.C. § 623(a)(1)) (internal quotation marks omitted). To succeed on such a claim, a plaintiff must be able to set forth either direct evidence of age discrimination or circumstantial evidence that is sufficient to raise an inference of discrimination. At the motion to dismiss stage, although the complaint "need not present detailed factual allegations, it must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference [that the plaintiff was discriminated against because of his age]." *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 463 (6th Cir. 2015) (cleaned up).
>
> As found herein, the only claims that Plaintiff administratively exhausted and can therefore pursue in this lawsuit are his claims that he was rejected for a promotion and terminated from his employment because of age discrimination. Defendant argues that Plaintiff's allegations that he was not promoted and was terminated because of his age are not sufficient to state claims for relief. Defendant contends that Plaintiff's allegations lack specificity about the ages and identities of the workers who were selected for the promotion and who replaced him and that Plaintiff also does not set out any facts linking the decisions to age bias. *See* Defendant's Memorandum in Support at 9-11. Essentially, Defendant argues that Plaintiff has made only conclusory allegations that track the elements of ADEA claims. *Id.*
>
> Defendant's argument is not unreasonable given that Plaintiff's *pro se* allegations are not a model of clarity and that his numerous allegations concerning unexhausted claims are the dominant focus of his amended complaint. Nonetheless, the Court finds that, when liberally construed and taken as true, Plaintiff's amended complaint is sufficient to state plausible claims that he was denied a promotion and was terminated because of his age.

> Plaintiff has identified these claims with specificity and in more than a conclusory fashion. The adverse actions identified by Plaintiff are discreate acts that fall within recognized categories of employment actions that can support discrimination claims and are not based upon vague allegations that Plaintiff was merely treated differently than other employees. Plaintiff has specifically alleged that he falls into the protected class under the ADEA and that employees outside the protected class were selected for a promotion for which he applied and replaced him when he was terminated. These factual allegations, while not extensive, are sufficient to raise an inference of age discrimination and to give Defendant sufficient notice of the claims and the facts upon which they are based. *See Solima v. City of Brentwood*, No. 3:20-CV-00338, 2021 WL 1840565, at *5 (M.D. Tenn. May 7, 2021) (Trauger, J.) (plaintiff need not name the replacement employee, and his allegation that "he was replaced by an employee who was outside his protected class" is sufficient). This is especially so when buttressed by the facts alleged in Plaintiff's Charge of Discrimination. While the cases referenced by Defendant in its supporting memorandum are relevant, the Court finds that they are not determinative of the issue given that the plausibility standard is not a high threshold and hinges upon the unique facts of each case.
>
> In finding that Plaintiff's allegations are sufficient to state plausible claims that survive Defendant's motion to dismiss, the Court offers no opinion as to the underlying merits of the claims or whether other defenses to the claims exist. It may well be that, when challenged by a motion for summary judgment, the claims will fail given the law and evidentiary standards that apply to such a challenge. However, at the current stage of the case, Plaintiff's allegations are sufficient to require further development of the claims.

(Doc. No. 40 at 11-13).

Based on the foregoing, the Magistrate Judge ultimately recommended that the Motion be granted "with respect to Plaintiff's claims under Title VII and the ADA"—insofar as the Magistrate Judge recommended that those claims be dismissed in their entirety—"and [with respect to] Plaintiff's ADEA claims [that are] based on anything other than failure to promote and wrongful termination"—insofar as the Magistrate Judge recommended that Plaintiff's ADEA claims that are based on anything other than failure to promote and wrongful termination be dismissed. (*Id.* at 13). The Magistrate Judge further recommended that the Motion be denied "with

respect to Plaintiff's ADEA claims for failure to promote and wrongful termination and that these claims proceed for further development." (*Id.* at 14).

## LEGAL STANDARD

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which a proper objection is made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).[7] The district judge may accept, reject, or modify

[7] Significantly, and perhaps surprisingly, the statute does not actually direct the district judge to expressly rule on the objections themselves (i.e., expressly sustain or reject the objector's *specific* criticism(s) of what the magistrate judge did). Instead of requiring the district judge to determine *the* validity of the objections to what the magistrate judge did, the statute requires the district judge to make a determination—*de novo*, which inherently means ultimately without reference to whether what the magistrate judge did was objectionable—as to the portion(s) of the report and recommendation to which objection was made. Moreover, since the review of the objected-to portions of the report and recommendation is *de novo*, any critiquing of what the magistrate judge did ultimately would be dicta (albeit relevant and probative dicta to the extent that such critiquing explains the analysis underlying the district judge's determination of the objected-to portions of the R&R). Additionally, district judges in this Circuit not infrequently either decline to rule on (or, to the same effect, deny as moot) particular objections on the specific ground that so doing is unnecessary to rule on the objected-to portion of the report and recommendation. *E.g., Collins v. Bright*, No. 2:13-CV-02987-JPM-CGC, 2021 WL 5205622, at *3 (W.D. Tenn. Nov. 9, 2021) ("[T]his objection does not affect or alter the conclusions of the Magistrate Judge and is overruled as moot."); *Lashuay v. Fornwalt*, No. 1:15-CV-1109, 2017 WL 4160947, at *1 (W.D. Mich. Sept. 20, 2017) ("This Court need not resolve all of the objections," because only some of them needed to be addressed in order to resolve the motion that was the subject of the report and recommendation); *Weatherspoon v. Williams*, No. 2:14-CV-108, 2016 WL 6070994, at *1 (W.D. Mich. Oct. 17, 2016) ("Plaintiff's objections are irrelevant and will be denied."); *Bowers v. Burnett*, No. 1:08-CV-469, 2011 WL 1047343, at *2 n.1 (W.D. Mich. Mar. 18, 2011) (noting that the Court need not resolve an objection to the extent that the objector's position on the R&R has other fatal deficiencies); *Powell v. Alcoa High Sch.*, No. 3:10-CV-212, 2010 WL 2598260, at *2 (E.D. Tenn. June 24, 2010) ("Because this objection is irrelevant to [the magistrate judge's] recommendations, it is hereby overruled.") *Cline v. Kelly*, No. 09CV859, 2010 WL 1006529, at *9 n.1 (N.D. Ohio Mar. 16, 2010) ("The Court acknowledges [the petitioner's] objection, but need not resolve it because that specific fact is not relevant to the resolution of any of the grounds for relief set forth in [the] Petition" that the magistrate judge had recommended be denied.).

Nevertheless, after announcing below the conclusion that it reached upon the required *de novo* review, the Court specifically addresses Plaintiff's and Defendant's various objections to explain why they did not incline the Court to accept their respective positions on *de novo* review.

the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

A district judge is not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which no proper objection is made. *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*, No. 3:18-CV-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).

"Only 'specific written objections' to the magistrate judge's proposed factual findings and legal conclusions are 'proper' under Federal Rule of Civil Procedure 72(b)." *Frias v. Frias*, No. 2:18-CV-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). Furthermore, Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of a magistrate judge's report or proposed findings or recommendations to which an objection is made. L.R. 72.02(a); *see also See* Fed. R. Civ. P. 72(b)(2). Significantly, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias*, 2019 WL 549506, at *2 (internal citations and quotations omitted). In other words, "the district court need not provide *de novo* review," or any other type of review, "where the objections are 'frivolous, conclusive or general,'" and therefore improperly made. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). *See also Ashraf*, 322 F. Supp. 3d at 881 ("The district court is not required to review—under a *de*

*novo* or any other standard—those aspects of the report and recommendation to which no objection is made." (citation omitted)); *Benson*, 2018 WL 6322332, at *3 (same).

## ANALYSIS OF THE PARTIES' OBJECTIONS AND THE PORTIONS OF THE R&R THAT THEY IMPLICATE

The Court next examines first Plaintiff's Objections and then Defendant's Objections.

Plaintiff's Objections are difficult to follow. As best the Court can tell, Plaintiff's Objections seem to comprise, in effect, two objections. Via the first objection, Plaintiff takes issue with the Magistrate Judge declining look beyond what is included in Plaintiff's Charge of Discrimination in determining the claims for which Plaintiff had exhausted his administrative remedies.[8] (Doc. No. 41 at 1-2). Plaintiff seems to object specifically to the Magistrate Judge not considering, in her evaluation of administrative exhaustion, the six exhibits (Doc. Nos. 38-1 through 38-6) that Plaintiff attached to his supplemental response at Docket No. 38. (Doc. No. 41 at 1-2). Via the second objection, Plaintiff seems to take issue with the Magistrate Judge declining to permit "supplementation" (whatever that precisely means), "limited discovery, or an evidentiary

[8] Of note, Plaintiff also seems like he might be objecting to the Magistrate Judge not looking beyond the "typed EEOC intake [interview summary] [(Doc. No. 36-1 at 19-24)]" in considering the issue of administrative exhaustion. (Doc. No. 41 at 1). However, the Magistrate Judge did not consider what was in the EEOC intake interview summary in conducting her analysis of administrative exhaustion, and indeed, while acknowledging the existence of the interview summary (Doc. No. 40 at 10), explicitly cabined her analysis of administrative exhaustion solely as to what was contained in the Charge of Discrimination. (Doc. No. 40 at 11 ("Plaintiff fails to show any reason that the Court should look beyond what is contained in his actual Charge of Discrimination in determining what claims have been exhausted.")). Indeed, the Magistrate Judge specifically rejected the notion that she should consider the "typed EEOC intake [interview summary] (Doc. No. 41 at 1), in her analysis of administrative exhaustion. (Doc. No. 40 at 10 ("[Plaintiff] asks the Court to first consider the summary of the intake interview notes taken by the EEOC investigator during Plaintiff's telephone interview as a basis to expand what is included in his Charge of Discrimination. . . . The Court rejects Plaintiff's argument without reservation.")).

And so, the Court construes Plaintiff's objection as an objection solely to the Magistrate Judge not looking beyond what is included in the Charge of Discrimination in her analysis of the issue of administrative exhaustion, and specifically an objection to the Magistrate Judge not looking, in her consideration of the issue of administrative exhaustion, to the six exhibits (Doc. Nos. 38-1 through 38-6) that Plaintiff attached to his supplemental response at Docket No. 38.

hearing to resolve exhaustion" prior to entering the R&R and therein recommending the dismissal of many of Plaintiff's claims based on a lack of administrative exhaustion. (*Id.* at 2).[9]

Defendant's Objections are threefold. As for the first objection, Defendant states:

> GNC objects to the R&R's recommendation that Plaintiff's ADEA failure-to-promote claim should survive GNC's motion to dismiss. The R&R concluded that Plaintiff's allegations are "sufficient to raise an inference of age discrimination" despite Plaintiff's failure to identify any younger selectee by name, state any comparator's age, allege any facts regarding comparator qualifications, or plead any facts connecting the promotion decisions to age bias. This conclusion is contrary to the Sixth Circuit's holdings in *Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013); *House v. Rexam Beverage Can Co.*, 630 F. App'x 461 (6th Cir. 2015); and *16630 Southfield Ltd. P'ship v. Flagstar Bank*, F.S.B., 727 F.3d 502 (6th Cir. 2013).

(Doc. No. 47 at 1-2). As for the second objection, Defendant states:

> GNC objects to the R&R's recommendation that Plaintiff's ADEA wrongful termination claim should survive GNC's motion to dismiss. The R&R concluded that Plaintiff's bare allegation that he "was over 40" when terminated and was "replaced . . . with a younger worker under 40" was "sufficient to raise an inference of age discrimination." This conclusion cannot be reconciled with *Han v. University of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013), which held that such a "minimal allegation" does not plausibly support an inference of discrimination "absent facts connecting the personnel action to discriminatory animus or identifying meaningful comparators."

(Doc. No. 47 at 2). As for the third objection, Defendant states:

> GNC objects to the R&R's reliance on the Charge File to supplement the factual deficiencies in Plaintiff's Amended Complaint. The R&R reasoned that Plaintiff's allegations are "especially" sufficient "when buttressed by the facts alleged in Plaintiff's Charge of Discrimination." This approach conflates the exhaustion inquiry with the plausibility inquiry and allows a plaintiff to cure pleading deficiencies through documents not incorporated into the operative complaint, contrary to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[9] In his Reply, Plaintiff also seems to raise new objections to the R&R that were not raised in Plaintiff's Objections, namely that the claims that the Magistrate Judge recommended dismissal of on the basis of a lack of administrative exhaustion were in fact "reasonably expected to grow out of the EEOC investigation" (Doc. No. 51 at 5) and that the Charge of Discrimination should have been (and yet, according to what Plaintiff seems to suggest, was not) "construed liberally." (*Id.* at 3). The Court declines to consider those (purported) objections, for two reasons. First, as noted in a footnote above, the Local Rules do not contemplate replies made in further support of objections to a report and recommendation. And second, the objections raised within the Reply were not first properly raised in Plaintiff's Objections.

(Doc. No. 47 at 2).

Having conducted a *de novo* review of those portions of the R&R to which Plaintiff and Defendant respectively objected, the Court reaches precisely the same conclusion as to those portions as did the Magistrate Judge. As to those portions, the Magistrate Judge applied the proper legal standards in her evaluation of the Motion and came to the same conclusion as the undersigned would have if the undersigned had been evaluating the Motion in the first instance. And neither Plaintiff's Objections nor Defendant's Objections incline the Court to depart from this position in any respect, for reasons the Court explains below.

**1. Plaintiff's Objections**

The first of Plaintiff's two objections, whereby Plaintiff challenges the Magistrate Judge's declining to look beyond what is included in Plaintiff's Charge of Discrimination in assessing Plaintiff's exhaustion of administrative remedies, is unavailing. As relevant here, the Sixth Circuit stated in case that, although unreported, was relying on reported Sixth Circuit case law:

> The exhaustion doctrine precludes an employee from suing under Title VII[, the ADEA] or the ADA unless she has exhausted her administrative remedies. To exhaust, an employee must file a charge of discrimination with the EEOC that includes all claims the employee intends to bring in district court. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Only claims that are included in the charge or are "reasonably related to or grow out of the factual allegations in the EEOC charge" may be heard in federal court. *Id.* at 361–62.

*Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 236 (6th Cir. 2017).[10] The Court is aware, however, that there are circumstances where documents other than a formal EEOC charge

[10] In *Ross*, the Sixth Circuit did not explicitly address administrative exhaustion requirements in the context of ADEA claims. However, ADEA claims have the same administrative exhaustion requirements as Title VII and ADA claims. *See Dimas v. Michigan Dep't of C.R.*, No. 4:02-CV-178, 2004 WL 1397558, at *3 (W.D. Mich. Mar. 19, 2004) ("Claims under the ADEA are subject to the same exhaustion requirements [as claims under Title VII]."); *Perry v. City of Jackson*, No. 1:23-CV-01254-JDB-JAY, 2024 WL 4163516, at *3 (W.D. Tenn. Aug. 21, 2024) (applying the same exhaustion requirements to both ADA and ADEA

of discrimination (like Plaintiff's Charge of Discrimination) may be considered in evaluating whether a plaintiff has exhausted his or her administrative remedies. *See Sullivan v. Progressive Cas. Ins. Co.*, No. 2:21-CV-02314-SHM-CGC, 2022 WL 1274429, at *4 (W.D. Tenn. Apr. 28, 2022) ("Several courts have found that EEOC intake questionnaires and other, similar documents may constitute charges for purposes of administrative exhaustion requirements." (collecting cases)).

Here, however, Plaintiff has provided no basis for the Court to conclude that it properly may consider, in resolving the issue of administrative exhaustion, those documents that Plaintiff wishes for the Court to consider—i.e., the six exhibits (Doc. Nos. 38-1 through 38-6) that Plaintiff attached to his supplemental response at Docket No. 38, which are composed of (1) the notes taken by Plaintiff of an EEOC intake interview (Doc. No. 38-1); (2) certain call logs (Doc. Nos. 38-2, 38-3); (3) after the fact declarations regarding what Plaintiff contends are corrections to omissions or errors in the EEOC intake interview summary (Doc. Nos. 38-4, 38-5); and (4) a filing that relates to some company-wide policies of Defendant (Doc. No. 38-6). And the Court independently discerns no such basis. In these circumstances, the Court concludes—just as the Magistrate Judge did, (Doc. No. 40 at 10-11)—that there was (and is) no basis to consider the foregoing documents in determining for which claims Plaintiff exhausted his administrative remedies. And so, this objection is without merit.

There is likewise no merit to Plaintiff's second objection, whereby Plaintiff claims that the Magistrate Judge erred in declining to permit "supplementation, limited discovery, or an evidentiary hearing to resolve exhaustion" prior to recommending (via the R&R) dismissal of many of Plaintiff's claims for lack of administrative exhaustion. In the first place, the Magistrate

---

claims), *report and recommendation adopted*, No. 1:23-CV-01254-JDB-JAY, 2024 WL 4151164 (W.D. Tenn. Sept. 11, 2024).

Judge *did* permit a kind of "supplementation" (as that term is reasonably understood) prior to entering the R&R. Specifically, after the initial conclusion of briefing on the Motion, the Magistrate Judge required "Defendant to provide a copy of the charge of discrimination and required supplemental briefing from the parties on the issue of administrative exhaustion." (Doc. No. 40 at 3 (citing Doc. No. 35)). What's more, Plaintiff cites no authority to suggest that the Magistrate Judge erred in declining to "permit [any additional] supplementation, limited discovery, or an evidentiary hearing to resolve exhaustion" prior to entering the R&R. (Doc. No. 41 at 2). And the Court is aware of no such authority. So, Plaintiff's objection here is unavailing.

In sum, Plaintiff's Objections are not meritorious, and they do not sway the Court's *de novo* evaluation of the parts of the R&R to which they pertain.

**2. Defendant's Objections**

The Court next addresses in turn each of Defendant's three objections.

Via its first objection, Defendant takes issue with the Magistrate Judge's conclusion that Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA failure-to-promote claim so as to survive the Motion. (Doc. No. 47 at 1-2). Defendant specifically asserts that the Magistrate Judge's finding "that Plaintiff's allegations are 'sufficient to raise an inference of age discrimination' despite Plaintiff's failure to identify any younger selectee by name, state any comparator's age, allege any facts regarding comparator qualifications, or plead any facts connecting the promotion decisions to age bias" is contrary to Sixth Circuit precedent, specifically *Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013), *House v. Rexam Beverage Can Co.*, 630 F. App'x 461 (6th Cir. 2015), and *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502 (6th Cir. 2013). (Doc. No. 47 at 1-2).

Defendant's objection here is unavailing, for three reasons. First, Defendant does not explain (or even attempt to explain) why the Magistrate Judge's findings on this point run contrary to the Sixth Circuit cases that Defendant cites, and in fact Defendant does not even provide pinpoint citations to where these cases are instructive regarding the correctness of those findings. Instead, Defendant asserts baldly and without explanation that the Magistrate Judge's decision is contrary to the Sixth Circuit precedent that Defendant cites. Second, both *Han* and *House*—two of the cases cited by Defendant in support of this objection—are unreported and thus non-precedential cases. What's more, those two cases do not even discuss failure-to-promote claims, and *Han* itself is not even a case involving age discrimination. Third, the only reported case that Defendant cites in support of this objection—*16630 Southfield Ltd. P'ship*—concerns claims brought under the Equal Credit Opportunity Act and alleging discrimination on account of national origin.[11] So, each of the cases relied on by Defendant is one or more of the following: (1) completely unexplained by Defendant; (2) non-reported and thus non-precedential; and (3) seemingly inapplicable to Plaintiff's ADEA failure-to-promote claim. More importantly, the Court notes that Plaintiff's allegations, although sparse, do—when taken as true as required—plausibly suggest (or otherwise permit the Court draw the reasonable inference) that Plaintiff's alleged lack of promotion was due to age discrimination. For instance, Plaintiff alleges that he is over 40 years old, (Doc. No. 26 at 5), and further alleges:

> After I applied for a promotion via a posting labeled 'AZ City', it appears that although I was qualified for the position the employer apparently passed over my application due to my age and then surreptitiously posted an identical position labeled 'Phoenix AZ' apparently to try to find younger applicants. Although the

[11] The point here is not that the cases on which Defendant relies could not conceivably inform (at least to some degree) the Court's analysis of Plaintiff's ADEA claim for failure to promote. And, as for the fact that some of the cases on which Defendant relies being unreported, the Court frequently relies on unreported cases as persuasive authority and indeed has done so herein. Instead, the point is that Defendant has failed to present the Court with either (i) binding or on-point authority to suggest that the Magistrate Judge erred, or (ii) an explanation as to how the cases that it cites support its objection here.

> application may have been filed outside of the claims "window" the status of the application was still pending within the claims "window" (December 2023). I also applied for other similar promotions including the Phoenix AZ DM position mentioned above without success.

(*Id.*). Though sparse, these allegations are just enough to defeat a motion to dismiss, particularly in light of Plaintiff's *pro se* status.[12] Indeed, Defendant's assertion that Plaintiff's failure to "identify any younger selectee by name, state any comparator's age, allege any facts regarding comparator qualifications, or plead any facts connecting the promotion decisions to age bias" dooms Plaintiff's ADEA failure-to-promote claim (Doc. No. 47 at 1-2) is undercut by a recent decision from this Court that the undersigned finds persuasive. Therein, Judge Trauger explained—in the context of evaluating the futility of amending[13] a complaint to assert an ADEA claim based on the termination rather than the failure to promote of an employee—that "the mere failure to identify [a] younger employee does not doom [an ADEA] claim. A complaint . . . only requires allegations that nudge [the claim(s) for relief] 'across the line from conceivable to plausible.'" *Solima v. City of Brentwood*, No. 3:20-CV-00338, 2021 WL 1840565, at *5 (M.D. Tenn. May 7, 2021). The upshot is that Defendant's first objection is unavailing.

Via Defendant's second objection, Defendant takes issue with the Magistrate Judge's recommendation that Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA wrongful-termination claim so as to survive the Motion. (Doc. No. 47 at 2). Defendant specifically argues that Plaintiff's allegations are insufficient to raise an inference of age discrimination, and in support of this argument relies solely on *Han v. University of Dayton*,

---

[12] As is well established, "[p]ro se pleadings are entitled to liberal construction." *Tobias v. State*, No. 18-1892, 2018 WL 8969133, at *1 (6th Cir. Dec. 17, 2018).

[13] Notably, in considering whether amendment of a complaint would be futile, a court considers—among other things—whether "that [amended] complaint could [] survive a Rule 12(b)(6) motion to dismiss." *Saqr v. Univ. of Cincinnati*, No. 1:18-CV-542, 2020 WL 5361669, at *6 (S.D. Ohio Sept. 8, 2020).

541 F. App'x 622, 626–27 (6th Cir. 2013). (Doc. No. 47 at 2).[14] This objection is likewise unavailing. As an initial matter, *Han*, as noted above, is an unreported case (and thus non-precedential). Moreover, *Han* did not even involve claims of age discrimination and instead involved claims regarding race and gender discrimination, and so the Court discerns that *Han's* applicability to Plaintiff's ADEA wrongful-termination claim is limited. What's more, the portion of *Han* cited by Defendant does not actually support the notion that Plaintiff failed to plausibly suggest that his alleged termination was due to his age. In relevant part, *Han* stated, in affirming the district court's dismissal of the plaintiff's claim for failure to state a claim:

> Certainly, Plaintiff pleads his own race and gender, and alleges that, as a result of his race and gender, he was given a bad evaluation [] and then ultimately fired. However, Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race or gender factored into the University's decisions regarding his employment or caused him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment. The Court is therefore left to infer that the University's decision-making regarding Plaintiff's employment was discriminatory simply based on the fact that he is a man, or that he is Asian–American, or both.

*Han*, 541 F. App'x at 626-27. In the instant case, however, Plaintiff has certainly pled more than the bare allegations present in *Han*. Indeed, as relevant to Plaintiff's ADEA wrongful-termination claim, Plaintiff alleges:

> The defendant terminated the plaintiff who was over 40 on 2-2-2024 and replaced him with a younger worker under 40[, thereby allegedly] creating a prima facie case for age discrimination.
>
> ***

[14] The Court observes that a (purported) quotation from *Han* set forth in Defendant's Objection appears nowhere in the *Han* opinion. The purported quotation at issue (one that is, according to Defendant, from *Han*) is: "such a 'minimal allegation' does not plausibly support an inference of discrimination 'absent facts connecting the personnel action to discriminatory animus or identifying meaningful comparators.'" (Doc. No. 47 at 2 (purportedly quoting *Han*, 541 F. App'x at 626-27)). The *Han* opinion both exists and involved claims of discrimination (albeit not age discrimination), and so the Court discerns that Defendant's error here is not a result of generative AI use by Defendant's counsel but is instead the result of a kind of human error that occurs from time to time. Defendant's counsel is advised to take greater care in the future to ensure that all quotations are accurate.

> The DM also provided better working conditions such as shorter hours to younger workers while increasing the Plaintiff's workload.

(Doc. No. 26 at 5).[15] These allegations, like the allegations concerning Plaintiff's failure-to-promote claim, are sparse. However, they are more extensive than the allegations at issue in *Han.* The Court finds that Plaintiff's allegations are enough (if only just barely and considering Plaintiff's *pro se* status) to plausibly suggest (or otherwise allow the Court to draw the reasonable inference) that Plaintiff's alleged termination was due to his age and thus are sufficient to defeat Defendant's Motion.[16] *Cf. Solima*, 2021 WL 1840565, at *1, *4-5 (finding, where a proposed amended complaint included—among other things—an allegation that "Defendant terminated Plaintiff and hired a younger employee not in his protected class, age 40 or above," that a claim under the ADEA was not futile for purposes of amendment). And so, Defendant's second objection is without merit.

That takes the Court to Defendant's final objection, whereby Defendant asserts that the Magistrate Judge erred by relying on Plaintiff's Charge of Discrimination in evaluating whether

[15] The Court added the word "allegedly" to preface Plaintiff's assertion that his termination and replacement by someone younger than him created a "prima facie case for age discrimination" because such assertion is a legal conclusion that the Court does not accept as true for purposes of the instant Motion and the R&R.

[16] Beyond the points that the Court has made above, one other point potentially could have led the Court to conclude that Defendant's first and second objections are unavailing: those objections are not proper objections at all. As the Court noted above, the filing of general or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object to a report and recommendation. *See also Frias*, 2019 WL 549506, at *2 ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."). And here, Defendant's first and second objections are both general *and* conclusory. Defendant's first and second objections assert in broad terms, and with scarce (and sometimes non-existent) argumentation and legal reasoning, that the Magistrate Judge erred in finding that Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA failure-to-promote and wrongful-termination claims. Indeed, in its first objection, Defendant did not even include pin cites to the authority it cites.

Nevertheless—and to Defendant's benefit—the Court has conducted a *de novo* review of those parts of the R&R to which Defendant's first and second objections were made and has not declined to consider the first and second objections on the basis of those objections not being proper objections at all.

Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA failure-to-promote and wrongful-termination claims.[17] Here, Defendant specifically argues that the Magistrate Judge erred by concluding that "Plaintiff's allegations are 'especially' sufficient 'when buttressed by the facts alleged in Plaintiff's Charge of Discrimination.'" (Doc. No. 47 at 2 (quoting Doc. No. 40 at 13)). The Court understands the point (grievance) that Defendant is making with this objection. However, the Court discerns no fault in the Magistrate Judge relying on Plaintiff's statements in the Charge of Discrimination, when evaluating whether Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA failure-to-promote and wrongful-termination claims. Indeed, the Charge of Discrimination was mentioned in Plaintiff's Amended Complaint (Doc. No. 26 at 6 ("It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on [] Q3 2024 (probably August)")). And although a copy of the Charge of Discrimination was not attached to the Amended Complaint, the Magistrate Judge subsequently issued an order (Doc. No. 35) requiring Defendant to file a copy of the Charge of Discrimination, which Defendant then did (at Docket No. 36-1 at 29-30).

The Court's conclusion here is supported by three points. First, as already noted above, the filings of a *pro se* litigant—like Plaintiff—are to be construed liberally. *Tobias*, 2018 WL 8969133, at *1. And construing the Amended Complaint as incorporating the Charge of Discrimination (including what is asserted therein)—which is in effect what the Magistrate Judge did—is

[17] Defendant frames its objection here partially in terms of the Magistrate Judge's reliance on the "Charge File" as a whole—i.e. reliance on the entire filing at Docket No. 36-1, which is composed of a copy of the "Charge File." But it is clear that in substance, Defendant takes issue with the Magistrate Judge's reliance specifically on the Charge of Discrimination, a copy of which is found on pages 29 and 30 of the filing at Docket No. 36-1. And so, the Court will discuss and analyze Defendant's objection here in terms of Magistrate Judge's reliance on the Charge of Discrimination in particular, rather than in terms of the Magistrate Judge's reliance on the "Charge File" as a whole.

consistent with this liberal standard. Second, in evaluating a 12(b)(6) motion to dismiss—like the Motion—it is well-established that a court may consider "items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). And here, the Charge of Discrimination was referred to in the Amended Complaint (Doc. No. 26 at 6), is certainly central to Plaintiff's claims, and (as noted in multiple places above) is also in the record of this case (specifically, at Docket No. 36-1 at 29-30). Third, and connected with the second point, the Court discerns that the Magistrate Judge acted well within her discretion to order Defendant to put the Charge of Discrimination into the record—and indeed, Defendant does not argue otherwise. The upshot is that Defendant's third objection also does not avail Defendant.[18]

Thus, Defendant's Objections are not meritorious, and they do not sway the Court's *de novo* evaluation of the parts of the R&R to which they pertain.

## CONCLUSION

Accordingly, the R&R (Doc. No. 40) is adopted and approved in its entirety, and therefore, the Motion (Doc. No. 30) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is granted insofar as (1) Plaintiff's claims under Title VII and the ADA are hereby dismissed in their entirety and (2) Plaintiff's ADEA claims that are based on anything other than failure to promote and wrongful termination are hereby dismissed. The Motion is denied with

---

[18] Even if the Court were to conclude that the Magistrate Judge erred by considering the Charge of Discrimination in evaluating whether Plaintiff's factual allegations plausibly suggest Defendant's liability on Plaintiff's ADEA failure-to-promote and wrongful-termination claims, Defendant's third objection would still be unavailing. Why? Because—consistent with the Court's earlier discussion of Defendant's first and second objections—Plaintiff has presented sufficient allegations in his Amended Complaint, irrespective of what is in the Charge of Discrimination, to plausibly suggest Defendant's liability on his ADEA failure-to-promote and wrongful-termination claims.

respect to Plaintiff's ADEA claims for failure to promote and wrongful termination and these claims proceed.

Additionally, for the reasons and with the caveats stated in a footnote above, the Motion to Supplement (Doc. No. 42), and the Discovery Motion (Doc. No. 43) are each **DENIED** as moot, and the Motion for Leave (Doc. No. 51) is **GRANTED**.

IT IS SO ORDERED.

Eli Richardson

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE